**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 04-cv-02232-REB-MJW

SIUSA VAII PAULINE ULIMASAO,

    Plaintiff,

v.

JOHN E. POTTER, Postmaster General, in his official capacity;
UNITED STATES POSTAL SERVICE; and
THE UNITED STATES OF AMERICA,

    Defendants.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

This matter is before me on the **Defendant's Motion for Summary Judgment on Plaintiff's Claims** [#39], filed January 12, 2006. The motion is granted.

### I. JURISDICTION & STANDARD OF REVIEW

I have federal question jurisdiction over the plaintiff's Complaint under 28 U.S.C. § 1331. In resolving the motions for summary judgment, I have considered the pleadings, discovery, and affidavits on file, together with the arguments advanced and authorities cited by the parties in their respective briefs. I have employed the analysis required by apposite law. *See* ***Anderson v. Liberty Lobby****, Inc.*, 477 U.S. 242, 250 (1986); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986); ***Matsushita Electric Industrial Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986); ***Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.***, 912 F.2d 1238, 1241 (10th Cir.1990); ***Redmon***

*v. United States*, 934 F.2d 1151,1155 (10th Cir. 1991); and *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994).

## II.  FACTS

The plaintiff, Siusa Vaii Ulimasao, is employed by the United States Postal Service (USPS) in Avon, Colorado.  In April, 2002, Francis Schuster was installed as Postmaster at Avon, Colorado.  Ulimasao alleges that a pattern and practice of harassment against her began immediately after Schuster's installation as Postmaster. *Complaint*, ¶ 12.  The alleged harassment, which is detailed in the complaint, continued until Schuster was removed from his position at Avon on April 3, 2003.  *Complaint*, ¶ 28.  Schuster was replaced by Dave Ruechel, who took over Schuster's position under the title Officer in Charge on April 6, 2003.

Ulimasao filed three formal EEO complaints addressing her claims that she had been subjected to unlawful harassment on the job.  These complaints led to two settlement agreements with the USPS, one dated November 25, 2002 (First Agreement), and one dated April 18, 2003 (Second Agreement).  The First Agreement required the USPS to ensure a work environment free from hostility, harassment, and other issues, and to provide education regarding sexual harassment on or before March 31, 2003.  In addition, the USPS was to provide Ulimasao with WINBATS training on or before December 31, 2002.  Ulimasao says she did not receive her WINBATs training until January 7-8, 2003.  The Second Agreement incorporated the First Agreement and allowed Ulimasao up to 160 hours of administrative leave.

On April 30, 2003, shortly after the execution of the Second Agreement, graffiti was found in the Avon Post Office.  This occurred a few days after the employees of the post office received sexual discrimination training, as required by the First Agreement.

On the day the graffiti was discovered, Dave Ruechel, the Officer in Charge, "had a stand-up talk and told everybody that (graffiti) will not be tolerated." *Plaintiff's deposition*, 210:17 - 211:11 (*Motion for Summary Judgment*, Attachment 14). Ruechel also distributed a memo advising employees in strong terms that graffiti was not acceptable, and stating that "anyone found engaged in these activities should expect serious disciplinary action, up to and including removal." *Motion for Summary Judgment*, Attachment 6. The plaintiff has testified that there have not been any further instances of graffiti. *Plaintiff's deposition*, 212:14-16 (*Motion for Summary Judgment*, Attachment 14).

In her response to the motion for summary judgment, the plaintiff complains that there was no investigation to determine who wrote the graffiti, and no disciplinary action was taken against the unknown perpetrators. Because the graffiti appeared shortly after the sexual discrimination training, she argues that the sexual discrimination training was not sufficient to insure a work environment free from hostility, as required by the First Agreement. It is undisputed, however, that Ruechel's reaction to the April, 2003, graffiti incident was effective. There have been no further incidents of graffiti.

On May 23, 2003, Ulimasao asked Ruechel if she could see her personnel file. Ruechel made her file available to her. Ulimasao discovered two letters in her file: 1) a sample letter of suspension from the Post Office in Des Plaines, Illinois, dated July 1, 2002, which had no name on it; and 2) an unsigned Notice of Suspension addressed to Ulimasao, and dated July 5, 2002. *Motion for Summary Judgment*, Attachment 7. Neither letter was signed by a supervisor. Ulimasao showed the letters to Ruechel who said they should not be in Ulimasao's file. Ruechel immediately removed the letters from Ulimasao's file. Ulimasao never was suspended or given a letter of suspension.

On August 22, 2003, Ulimasao filed a formal EEO complaint based on the two letters in her personnel file. *Motion for summary judgment*, Attachment 8. She complained that "there has been no accountability towards the people that were harassing and causing the hostile environment." *Id*., p. 2. The Postal Service dismissed this complaint on October 21, 2003. After its review, the Equal Employment Opportunity Commission (EEOC) determined that the Postal Service had acted properly in dismissing Ulimasao's August 22, 2003, complaint. *Motion for summary judgment*, attachment 9. The EEOC also ordered the Postal Service to determine whether it had breached the First and Second Agreements. On May 26, 2004, the Postal Service issued its Final Agency Decision (FAD) on this issue. *Motion for summary judgment*, Attachment 10. The Postal Service concluded that it did not breach either the First Agreement or Second Agreement.

Based on these facts, Ulimasao asserts claims for race discrimination, sex discrimination, hostile work environment based on gender, hostile work environment based on race, retaliation, and breach of contract. The breach of contract claim is based on alleged breaches of the First Agreement and Second Agreement.

### III.  ANALYSIS

In its reply, the Postal Service accurately categorizes Ulimasao's claims into three groups:  1) The breach of contract claim;  2) Claims based on incidents occurring prior to April 18, 2003, the date of the Second Agreement (race discrimination, sex discrimination, hostile work environment - sex, hostile work environment - race, retaliation); and 3) Claims based on the two letters found in Ulimasao's personnel file (sex discrimination, retaliation). After analyzing Ulimasao's claims in these three

categories, I conclude that the defendant is entitled to summary judgment on each of Ulimasao's claims.

## 1.  Breach of Contract

The Postal Service argues that the undisputed facts in the record establish that the Postal Service did not breach the First Agreement or the Second Agreement.  In her response, Ulimasao cites two claimed breaches of the settlement agreements.  First, she argues that the Postal Service breached the Second Agreement, which incorporates the First Agreement, when the Postal Service failed to undertake an investigation to determine who wrote the graffiti that was found on April 30, 2003, and failed to take disciplinary action against the unknown perpetrators.  Because the graffiti appeared shortly after Postal Service had provided sexual discrimination training to employees of the Avon Post Office, she argues also that the sexual discrimination training was not sufficient to insure a work environment free from hostility, as required by the First Agreement.

The evidence in the record is not sufficient to demonstrate a genuine issue of material fact on Ulimasao's claim that these facts constitute a breach of the First or Second Agreements.  It is undisputed that Ruechel's reaction to the April, 2003, graffiti incident was swift and effective.  There have been no further incidents of graffiti.  Further, the plaintiff has testified that the harassment she had complained about has been resolved or addressed adequately since Ruechel took over as Officer in Charge on April 6, 2003.  *Plaintiff's deposition*, 225:4 - 20 (*Motion for Summary Judgment*, Attachment14).  This testimony demonstrates that Ruechel's management has been sufficient to insure a work environment free from hostility, as required by the First Agreement.  The evidence in the record is not sufficient to sustain Ulimasao's claim that

the Postal Service has breached its agreement to insure a work environment free from hostility.

Second, Ulimasao argues that the Postal Service breached the terms of the First Agreement when the two letters found in her personnel file, described above, were placed in her file and retained there.  She notes that the agreement provides that the Postal Service will "insure and maintain equality and equity to (Ulimasao)," and "Management will immediately deal with any improprieties brought to their attention." *Motion for Summary Judgment*, Attachment 3, p. 2.  The presence of the two letters in her file, Ulimasao argues, violates these terms.  I disagree.  When Ulimasao discovered the letters and notified Ruechel, the letters immediately were removed from her file. Management immediately dealt with an impropriety brought to its attention.  To the extent the presence of the letters in Ulimasao's file might be viewed as a breach of the agreement, Ulimasao's breach of contract claim still is fatally flawed.  Nothing in the record indicates that Ulimasao suffered any harm from such a breach.  The defendant is entitled to summary judgment on Ulimasao's breach of contract claim.

<u>2.  Claims Based on Incidents Prior to April 18, 2003.</u>

The Second Agreement was executed on April 18, 2003.  The Second Agreement resolved all of Ulimasao's employment discrimination claims against the Postal Service, including her hostile work environment and retaliation claims, and the claims addressed in the First Agreement.  *Motion for summary judgment*, Attachment 5, pp. 1 -2. It is undisputed that the parties entered into these agreements knowingly and voluntarily.  Ulimasao waived her right to file suit on these claims by voluntarily entering into the settlement agreements.  **See, e.g., Torrez v. Public Service Co. of New Mexico, Inc.**, 908 F.2d 687, 689 (10th Cir. 1990).  Absent a breach of the settlement

6

agreements, Ulimasao's waiver remains effective. As discussed above, the evidence in the record does not support Ulimasao's claim that the Postal Service has breached the settlement agreements. Therefore, Ulimasao is barred from asserting her claims of employment discrimination based on incidents occurring prior to the April 18, 2003, agreement. The defendant is entitled to summary judgment on these claims.

3. Additional Claims Based on the Two Letters Found in Ulimasao's Personnel File

Ulimasao alleges in her complaint that the presence of the two letters in her personnel file constitutes discrimination based on her gender and retaliation. *Complaint*, ¶¶ 37 (a), 58. Both of these claims require proof of an adverse employment action. **See, e.g., Aquilino v. University of Kansas**, 268 F.3d 930, 934 (10th Cir. 2001) (retaliation claim).

> To be an adverse action, the employer's conduct must be "materially adverse" to the employee's job status. **Sanchez v. Denver Pub. Schs.**, 164 F.3d 527, 533 (10th Cir.1998). The adverse action must amount to "a significant change in employment status," such as "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." **Aquilino v. Univ. of Kansas**, 268 F.3d 930, 934 (10th Cir.2001) (quoting **Burlington Indus., Inc. v. Ellerth**, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

**Meiners v. University of Kansas**, 359 F.3d 1222, 1230 (10th Cir. 2004).

Nothing in the record demonstrates that the presence of the two letters in Ulimasao's personnel file was materially adverse to her job status, or that Ulimasao suffered any significant change in her employment status that is connected in any way to the two letters. There is no evidence that any action ever was taken based on either letter. Again, when Ulimasao discovered the letters in her file, and showed the letters to Ruechel, the letters were removed immediately from her file. The defendant is entitled to summary judgment on Ulimasao's claims of sex discrimination and retaliation, based

7

on the presence of the two letters in her file, because there is no evidence that the two letters are in any way connected to any adverse employment action.

## IV.  CONCLUSION AND ORDERS

For the reasons detailed above, I conclude that no rational trier of fact could find for Ulimasao on any of her claims based on the showing made in the motion, response, and reply.  The defendant, therefore, is entitled to judgment as a matter of law on each of the claims asserted by the plaintiff in her complaint.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendant's Motion for Summary Judgment on Plaintiff's Claims** [#39], filed January 12, 2006, is **GRANTED**;

2.  That judgment **SHALL ENTER** in favor of the defendant against the plaintiff on each of plaintiff's claims for relief;

3. That the defendant is **AWARDED** its costs to be taxed by the clerk of the court pursuant to **FED. R. CIV. P. 54(d)(1)** and **D.C.COLO.LCivR 54.1**;

4. That the Trial Preparation Conference set July 21, 2006, at 9:00 a.m. is **VACATED**;

5. That the Trial set August 7, 2006, at 9:00 a.m. is **VACATED**; and

6. That this case is **DISMISSED** with prejudice.

Dated July 14, 2006, at Denver, Colorado.

              **BY THE COURT:**

              s/ Robert E. Blackburn
              **Robert E. Blackburn**
              **United States District Judge**